**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KONDAUR CAPITAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 11 C 7038 |
| v. | ) | |
| | ) | |
| STEWART TITLE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant Stewart Title Company's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (R. 13.) For the reasons set forth below, the Court grants in part, and denies in part, Defendant's motion to dismiss.

**BACKGROUND**

Plaintiff Kondaur Capital Corporation is a Delaware-based licensed mortgage purchaser and service provider, with its principal place of business in California. (R. 1, Not. of Rem., Ex. A, Compl. ¶ 1.) Defendant Stewart Title Company is a Texas-based title insurance company with its principal place of business in Texas.[1] (*Id.* ¶¶ 5-6.) Plaintiff pleads the following facts in the Complaint.

In April of 2005, MidAmerica Bank, FSB ("MidAmerica") "made a loan" to Luis and Maria Dominguez (the "Dominguez Loan"), which "was to be secured by a first mortgage" on

---

[1]Defendant is the successor-in-interest to Stewart Title Company of Illinois, the entity named originally in the state court complaint. (Not. of Rem. ¶ 5.)

1

their residence located at 7546 West Gunnison, Harwood Heights, Illinois (the "Property").
(Compl. ¶ 4.)  The loan "closed" on April 21, 2005, and MidAmerica "disbursed the loan
proceeds."  (*Id.* ¶ 5.)  Defendant "was the closing agent responsible for closing the Dominguez
[L]oan," and received "remuneration for such services" out of the loan proceeds.  (*Id.* ¶ 6.)  "In
connection with the Dominguez Loan, title insurance was purchased" from Defendant.  (*Id.* ¶ 7.)

Prior to the April 21, 2005 closing date, "MidAmerica delivered to [Defendant] a
document entitled 'Agency Closing Transmittal,'" or "Closing Instructions."  (*Id.* ¶ 8 & Ex. 1.)
This document "required" Defendant to "insure, inter alia, that MidAmerica was in a first lien
position prior to closing."  (*Id.*)  On or about the closing date, Defendant "issued to MidAmerica
a 'First Lien Letter' insuring that MidAmerica would have a first lien on the Property.'"  (*Id.* ¶ 9
& Ex. 2.)  "The First Lien Letter was issued pursuant to MidAmerica's requirement in the
Closing Instructions that it be in a first lien position before the Dominguez Loan could close."
(*Id.*)  Additionally, the First Lien Letter "was separately and independently bargained for," and
"provided MidAmerica with a guarantee and indemnification coverage insuring that
MidAmerica would have a first lien on the Property at the time of the loan closing."  (*Id.* ¶ 9.)
Sometime in 2009, PNC Bank, N.A. ("PNC Bank") "became successor in interest" to
MidAmerica.  (*Id.* ¶ 11.)

In January of 2009, Vale Foods, Inc. ("Vale Foods") commenced foreclosure proceedings
on the Property based on a "mortgage executed by the Dominguezes in favor of Vale Foods in
2003."  (*Id.* ¶ 13.)  Sometime in 2011, Plaintiff "purchased the Promissory Note and Mortgage
associated with the Dominguez Loan from PNC."  (*Id.* ¶ 12.)  Additionally, "it was adjudicated
that [Plaintiff] via its purchase of the Dominguez Loan, was in second lien position behind the

2

Vale Foods Prior Mortgage." (*Id.* ¶ 13.)  Plaintiff "demanded that [Defendant] defend [Plaintiff's] interests in the Vale Foods foreclosure action pertaining to the Prior Mortgage," but Defendant "refused." (*Id.* ¶ 14.)  Additionally, Plaintiff "demanded that [Defendant] indemnify it for the loss incurred as a result of the Vale Foods Prior Mortgage being adjudicated to be in the first lien position," but Defendant "refused." (*Id.* ¶ 15.)

On August 26, 2011, Plaintiff filed a civil action against Defendant in the Circuit Court of Cook County, Illinois.  Defendant timely removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, on the basis of diversity of citizenship.  The Complaint contains seven state law counts, specifically Breach of Defense and Indemnity Obligation Under First Lien Letter (Count I); Statutory Damages for Bad Faith Failure to Pay or Settle, in violation of 215 ILCS 5/155 (Count II); Promissory Estoppel - First Lien Letter (Count III); Fraudulent Misrepresentation - First Lien Letter (Count IV); Breach of Contract - Closing Instructions (Count V); Promissory Estoppel - Closing Instructions (Count VI); and Fraudulent Misrepresentation - Closing Instructions (Count VII).  In the present motion, Defendant seeks to dismiss the Complaint in its entirety.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted."  *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *AnchorBank, FSB v. Hofer*, 649 F.3d 610 (7th Cir. 2011) (internal quotation and citation omitted).  Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the

3

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

As the Seventh Circuit has explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities[.]"  *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)).  The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555.  Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *see also Graczyk v. West Pub. Co.*, 660 F.3d 275, 279 (7th Cir. 2011) (stating in the context of a motion to dismiss, that the court will "construe the complaint in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor").

## DISCUSSION

Before reaching the merits of Defendant's arguments, the Court briefly addresses the scope of its review.  The Complaint contains two exhibits, namely the First Lien Letter, and the

Closing Instructions.  Defendant's motion to dismiss attaches the title insurance policy ("Title

Policy"), and a declaration of an employee attesting to the authenticity of the Title Policy.  In

addition, Plaintiff's response in opposition to Defendant's motion attaches a record relating to

MidAmerica's alleged assignment of the mortgage to Plaintiff.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the pleadings, and

as such, the Court's "consideration of matters outside the pleadings is not generally permitted,"

unless the Court converts the motion into one for summary judgment pursuant to Rule 12(d).

*See McIntyre v. McCaslin*, No. 11 C 50119, 2011 WL 6102047, at *4 (N.D. Ill. Dec. 7, 2011)

(citing, *inter alia*, *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)).  One exception to

this general rule exists where the parties present records "to which the Complaint [refers]," are

"conededly authentic," and are "central" to the claims presented.  *See Hecker v. Deere & Co.*,

556 F.3d 575, 582 (7th Cir. 2009).

As applied to this case, the Court will consider the First Lien Letter and the Closing

Instructions in evaluating the motion to dismiss.  Plaintiff relies extensively on these documents

in its Complaint, there is no suggestion that the documents are not authentic, and the documents

directly give rise to Plaintiff's causes of action.  *See Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d

657, 661-62 (7th Cir. 2002) ("'[D]ocuments attached to a motion to dismiss are considered part

of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.

Such documents may be considered by a district court in ruling on the motion to dismiss.'")

(quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).  The Court will

not, however, consider the remaining documents, including the Title Policy, declaration, and

record of assignment, none of which are attached to or discussed meaningfully in the Complaint.

Even if the Court considered these documents, however, its disposition of the present motion would be the same.

## I.     Breach of Contract Claims (Counts I and V)

In Count I, the Complaint alleges that Defendant "breached its obligations under the First Lien Letter by failing and refusing to defend and indemnify [Plaintiff] in connection with the claims asserted by Vale Foods in its action to foreclose the Prior Mortgage." (Compl. ¶ 21.)  In Count V, the Complaint alleges that Defendant "breached the contract created by the Closing Instructions [because] MidAmerica was not in a first lien position at the time of closing as required by the Closing Instructions."  (*Id.* ¶ 48.)

"Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements:  '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'"  *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 759, 814 N.E. 2d 960, 286 Ill. Dec. 734 (2004)). Although non-parties to a contract generally may not bring an action for breach of contract, Illinois law permits a non-party to do so if the contracting parties "intentionally entered into the contract for the direct benefit of the individual or entity." *Kawasaki Heavy Indus. Ltd. v. Bombardier Rec. Prods, Inc.*, No. 10-CV-00641, 2011 WL 1792228, at *5 (S.D. Ill. May 10, 2011) (citing *Martis v. Grinnell Mut. Reins. Co.*, 388 Ill. App. 3d 1017, 905 N.E.2d 920, 329 Ill. Dec. 82 (Ill. Ct. App. 2009) and *Bates & Rogers Constr. Corp. v. Greeley & Hansen*, 109 Ill. 2d 225, 486 N.E.2d 902, 906, 93 Ill. Dec. 369 (Ill. 1985)); *see also Golden v. Barenborg*, 53 F.3d 866, 870 (7th Cir. 1995).

Here, Defendant moves to dismiss Counts I and V on the basis that Plaintiff is neither a party nor a third party beneficiary to the contracts at issue. (Def.'s Mem. at 4.) Defendant reasons that the contracts were between Defendant and MidAmerica, and that Plaintiff did not acquire the mortgage until 2011, six years after the alleged contracts came into existence. (*Id.* at 5.) Plaintiff responds that it is not proceeding on a third-party beneficiary theory, but is instead proceeding on a theory of assignment. Specifically, Plaintiff argues that it is the "assignee" of the alleged contracts, and as such, "is entitled to all of the protections and assurances originally obtained by MidAmerica." (Pl.'s Resp. at 7.)

The Court agrees with Plaintiff to the extent Plaintiff argues that the issue of assignment is not properly resolved in the present motion to dismiss. Plaintiff plausibly alleges in the Complaint that PNC Bank became successor in interest to MidAmerica, and that Plaintiff subsequently purchased the promissory note and mortgage from PNC Bank. (*See* Compl. ¶¶ 11-13.) Whether this transaction included or effected a valid assignment of MidAmerica's original rights under the alleged contracts is a question that the parties may explore during discovery. *See, e.g.*, *Am. Serv. & Prod., Inc. v. Aetna Health Ins. Co.*, No. 10 C 9055, 2011 WL 5415172, at *2 (N.D. Ill. June 9, 2011) (denying motion to dismiss, reasoning that the validity of any assignment "is a question of fact that we will not resolve on a motion to dismiss") (citing *Northwest Diversified, Inc. v. Desai*, 353 Ill. App. 3d 378, 818 N.E.2d 753, 761, 288 Ill. Dec. 818 (Ill. Ct. App. 2004) ("The creation and existence of an assignment is to be determined according to the intention of the parties, and that intention is a question of fact to be derived not only from the instruments executed by them, but from the surrounding circumstances") (citation and internal quotation marks omitted)).

7

Defendant alternatively argues, as to Count I, that the First Lien Letter "ceased to have any independent viability" after "the [T]itle [P]olicy was issued to [MidAmerica] in April 2005." (Def.'s Mot. at 4-5.)  Defendant relies on the language of the First Lien Letter, which states that "this first lien letter shall merge into the mortgage [Title Policy] to be issued by [Stewart Title Company]."  (*Id.* at 4 (quoting Compl., Ex. 2).)

As Plaintiff notes in response, however, the import of the merger clause is unclear, particularly because Defendant may not have issued the Title Policy to which the First Lien Letter refers as an apparent condition precedent to merger.  (Pl.'s Resp. at 3-4); *see also Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1147 (7th Cir. 2010) (holding that "nothing in *Iqbal* or *Twombly* precludes the plaintiff from later suggesting to the court a set of facts, consistent with the well-pleaded complaint, that shows that the complaint should not be dismissed").  Defendant admits in its motion to dismiss that another entity, Stewart Title Guaranty Company, may have issued the Title Policy.  (Def.'s Mem. at 7.)  As Plaintiff explains: "If [Defendant] did not issue the [T]itle [P]olicy, then the First Lien Letter did not merge into the [T]itle [P]olicy and it must be separately enforced."  (*Id.*)  The question of merger therefore raises issues that the Court cannot resolve in the present motion to dismiss.

Moreover, even if the First Lien Letter merged into the Title Policy, questions remain as to the effect of the merger, specifically whether the terms of the First Lien Letter were incorporated into the Title Policy, or superceded by the Title Policy.  (Pl.'s Resp. at 8); *see also Neppl v. Murphy*, 316 Ill. App. 3d 581, 589, 316 N.E.2d 1174, 249 Ill. Dec. 736 (Ill. Ct. App. 2000) ("whether and to what extent merger occurs is also a matter of the parties' intent as evidenced by the language of the instruments and surrounding circumstances") (citing *Daniels v.*

8

*Anderson*, 162 Ill. 2d 47, 642 N.E.2d 128, 204 Ill. Dec. 666 (1994)).

Accordingly, the Court denies Defendant's motion to dismiss as to Counts I and V.

## II.      Statutory Damages (Count II)

In Count II, the Complaint seeks damages pursuant to 215 ILCS 5/155, alleging that

Defendant "has unreasonably and vexatiously refused to" defend or indemnify Plaintiff.

(Compl. ¶¶ 23-27.)  Section 155 provides in relevant part:

> In any action by or against a company wherein there is in issue the liability of a
> company on a policy or policies of insurance or the amount of the loss payable
> thereunder, or for an unreasonable delay in settling a claim, and it appears to the
> court that such action or delay is vexatious and unreasonable, the court may allow
> as part of the taxable costs in the action reasonable attorney fees, other costs, plus
> an amount not to exceed any one of the following amounts
>
> > (a) 60% of the amount which the court or jury finds such party is entitled to
> > recover against the company, exclusive of all costs;
> > (b) $60,000;
> > (c) the excess of the amount which the court or jury.

215 ILCS 5/155(1); *see also Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200

F.3d 1102, 1110 (7th Cir. 2000) (wilful and without reasonable cause); *Horning Wire Corp. v.

The Home Indemnity Co.*, 8 F.3d 587, 590 (7th Cir. 1993).

Defendant seeks to dismiss Count II on the basis that the Complaint fails "to allege any

facts in support of its conclusory allegation that [Defendant] acted vexatiously and unreasonably

in not defending [Plaintiff] in the Vale Foods foreclosure action."[2]  The Court agrees.  "Simply

---

[2]Defendant additionally argues that Defendant did not issue any insurance policies, but
rather another entity – Stewart Title Guaranty Corporation – issued any relevant insurance
policies.  This argument presents a question of fact, similar to that discussed above at page 8.
(*See* discussion *supra*, at page 8 (stating that the identity of the corporate entity that issued the
Title Policy – either Defendant or Stewart Title Guaranty Corporation – is a question of fact not
properly resolved in the present motion to dismiss).)

pleading that [the defendant] knowingly and intentionally refused to provide insurance coverage and that [the defendant's] refusal 'was and continues to be vexatious and unreasonable,' without some modicum of factual support, is insufficient to plausibly suggest that [the plaintiff] is entitled to relief under the statute." *Scottsdale Ins. Co. v. City of Waukegan*, No. 07 C 64, 2007 WL 2740521, at *2 (N.D. Ill. Sept. 10, 2007). Plaintiff does just that. Plaintiff offers no factual support whatsoever in support of its conclusion that Defendant "has unreasonably and vexatiously refused to" defend or indemnity Plaintiff. This void deprives Plaintiff's allegations of the plausibility that Rule 12(b)(6) demands. *See, e.g.*, *Iqbal*, 129 S. Ct. at 1949 (holding that a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face") (internal citations and quotation marks omitted).

Accordingly, the Court grants Defendant's motion to dismiss as to Count II, without prejudice.

### III.    Promissory Estoppel (Counts III and VI)

In Counts III and VI, Plaintiff asserts claims of promissory estoppel arising out of its alleged reasonable reliance on Defendant's promises that it "would hold harmless and indemnify [MidAmerica] against actual loss or damage incurred by [MidAmerica] by reason of: the failure of the mortgage to be the first lien on the property," (Compl. ¶ 30 (First Lien Letter)), and additionally that "MidAmerica was in a first lien position when the Dominguez Loan closed on April 21, 2005." (*Id.* ¶ 51 (Closing Instructions).)

Under Illinois law, a claim of promissory estoppel requires Plaintiff to prove that (1) Defendant made an unambiguous promise; (2) Plaintiff reasonably relied upon the promise; (3) Plaintiff's reliance was expected and foreseeable to Defendant; and (4) Plaintiff relied on the

10

promise to its detriment. *See, e.g.*, *Martino v. MCI Comm'ns Servs., Inc.*, No. 08 C 4811, 2008 WL 4976213, at *8 (N.D. Ill. Nov. 20, 2008) (citing *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005)). Defendant advances three reasons in support of its motion to dismiss the promissory estoppel claims.

First, Defendant argues that "Defendant did not make any promises to [Plaintiff]," explaining that any "purported promises upon which [Plaintiff] relies were made by [Defendant] to MidAmerica [] in 2005, more than six years before [Plaintiff] even came into the picture." (Def.'s Mem. at 8.) As discussed above, however, MidAmerica may have assigned all of its rights to Plaintiff in connection with the sale of the mortgage, and moreover, the parties need discovery on the question of whether the scope of Defendant's promises extended to assignees of MidAmerica. Defendant cites no legal authority to support cutting off Plaintiff's promissory estoppel claims at this early junction.

Second, Defendant argues that Plaintiff has failed to plausibly allege reasonable reliance because: (1) Plaintiff does not allege its awareness of the promises when Plaintiff acquired the mortgage in 2011; (2) the Title Policy "disclosed that Vale Foods had a lien on the Property and that there was no coverage under the policy for that encumbrance"; and (3) Plaintiff was on record notice of the Vale Foods mortgage when it acquired the mortgage in 2011, because Vale Foods had recorded a notice of foreclosure in 2009. As with many of its preceding arguments, Defendant presents factual arguments that are more properly made in a motion for summary judgment. *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 767-68 (7th Cir. 2010) (stating that "[w]hether reliance was reasonable is ordinary a question of fact").

The Complaint plausibly alleges unambiguous promises by Defendant to MidAmerica,

from which Plaintiff acquired the mortgage at issue; that Plaintiff relied on those promises in

acquiring the mortgage; that such reliance was reasonable; that Defendant could reasonably

expect such reliance; and that Plaintiff incurred injuries.  (*See* Compl. ¶¶ 29-35, 50-55.)  Even if

other foreclosure actions were pending, this fact does not establish, for purposes of the present

motion, that Plaintiff knew that it was not in the first lien position.  To the extent the pendency of

other actions affected the reasonableness of Plaintiff's alleged reliance, the Court cannot resolve

that factual issue at the motion to dismiss stage.  Neither may the Court at this stage decide the

import of any indication in the Title Policy about the existence of the Vale Foods mortgage.

(Pl.'s Resp. at 11 (arguing that the language of the Title Policy suggests that the Vale Foods lien

was simply a business loan).)

Third, Defendant argues that any reliance by Plaintiff was "neither expected nor

foreseeable by" Defendant, because, among other things, Defendant made no promises to

Plaintiff, and could not have reasonably anticipated the sort of alleged reliance that occurred.

The Court rejects these arguments for the same reasons discussed above.  *See, e.g.*, *Triad Cap.*

*Mgmt., LLC v. Private Equity Cap. Corp.*, No. 07 C 3641, 2010 WL 3023409, at *8-9 (N.D. Ill.

July 29, 2010) (holding that the reasonableness of the plaintiff's reliance presented a question of

fact) (citing *First Nat'l Bank of Cicero v. Sylvester*, 196 Ill. App. 3d 902, 911-12, 554 N.E.2d

1063, 144 Ill. Dec. 24 (Ill. Ct. App. 1990) ("Each [element of a promissory estoppel claim]

presents a question for the trier of fact") (collecting cases)).

Accordingly, the Court denies Defendant's motion to dismiss as to Counts III and VI.

## IV.    Fraud Claims (Counts IV and VII)

In Count IV, the Complaint alleges that Defendant made fraudulent misrepresentations in

connection with the First Lien Letter and the Closing Instructions, namely that MidAmerica would have the first lien against the Property. (Compl. ¶¶ 36-41, 56-61.)

"To state a fraud claim under Illinois law, a plaintiff must allege that the defendant: (i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff." *Bank of Am., N.A. v. Shelbourne Dev. Grp., Inc.*, 732 F. Supp. 2d 809, 826 (N.D. Ill. 2010) (quoting *Reger Dev.,* 592 F.3d at 766). Additionally, in pleading a fraud claim in federal court, Rule 9(b) of the Federal Rules of Civil Procedure requires the plaintiff to state with particularity the circumstances constituting the alleged fraud. *See* Fed. R. Civ. P. 9(b); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-43 (7th Cir. 2011). The Rule "requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (internal quotation marks omitted). This requirement "ordinarily requires describing the who, what, when, where, and how of the fraud." *AnchorBank*, 649 F.3d at 615 (internal citation and quotation marks omitted).

Here, Defendant moves to dismiss the fraud claims for three reasons, each of which is unavailing. First, Defendant argues that "no misrepresentations were made by [Defendant] to [Plaintiff]," but were instead made to MidAmerica six years ago. (Def.'s Mem. at 11.) The Court considered the same argument in connection with the promissory estoppel claims, and rejects the argument again for the same reasons discussed above.

13

Second, Defendant argues that "there is no allegation that [Plaintiff] ever did rely on the first lien letter or the closing instructions." (*Id*.) This argument fails based on the allegations in the Complaint. (*See* Compl. ¶¶ 40-41 (First Lien Letter; alleging that "MidAmerica relied on [Defendant's] false statement of material fact that it was receiving a first lien on the Property, and a result of that reliance, MidAmerica released the loan funds at closing and consummated the loan"); *id.* ¶¶ 60-61 (Closing Instructions; alleging that "MidAmerica relied on [Defendant's] false statement of material fact that it was receiving a first lien on the Property, and as a result of that reliance, MidAmerica released the loan funds at closing").)

Third, Defendant argues that Plaintiff "had no right to rely on any representations" because it "was not a party to, or a third party beneficiary of, the first lien letter or the closing instructions." (Def.'s Mem. at 12.) This argument fails for the reasons discussed above. (*See supra* discussion at page 7.)

Accordingly, the Court denies Defendant's motion to dismiss as to Counts IV and VII.

**V.      Promissory Estoppel and Fraud Claims (Counts III, IV, VI, and VII)**

Finally, Defendant argues that the applicable statute of limitations of five years bars Plaintiff's claims of promissory estoppel and fraud in Counts III, IV, VI, and VII. *See* 735 ILCS 5/13-205. Defendant reasons that the claims accrued "on or about April 21, 2005," when the Title Policy that disclosed the existence of the Vale Foods mortgage was mailed to MidAmerica. (Def.'s Mem. at 12.) Illinois, however, follows the "discovery rule," under which the "cause of action accrues and the limitations period begins to run when 'the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.'" *In re marchFIRST, Inc.*, 589

14

F.3d 901, 904 (7th Cir. 2009) (internal citation omitted). Here, whether the limitations period

was tolled on April 21, 2005, turns on the reasonableness of Plaintiff's action or inaction, which

itself turns on factual circumstances present at the time Plaintiff acted or failed to act, including

the nature of the information, if any, that Plaintiff possessed relating to its claims. Under the

present circumstances, the Court cannot resolve these fact-intensive questions on the basis of the

pleadings alone. *See Ruth v. Paul Revere Life Ins. Co.*, No. 08 C 50102, 2010 WL 3527561, at

*3 (N.D. Ill. Sept. 2, 2010) (considering facts adduced during discovery to resolve issue of

tolling of the statue of limitations under the discovery rule).

Accordingly, the Court denies Defendant's motion to dismiss on the basis of the

applicable statute of limitations.

## CONCLUSION

For the reasons discussed above, the Court grants in part, and denies in part, Defendant's

motion to dismiss, and accordingly dismisses Count II, without prejudice. Plaintiff has until

February 17, 2012, to file an Amended Complaint consistent with this Opinion.

**Date:** February 2, 2012

ENTERED

**AMY J. STEVE**
**United States District Court Judge**

15